**YANNI LAW, APC**
John C. Bohren (California State Bar No. 295292)
145 S Spring St; #850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779


**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice Forthcoming*)
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Paul.doolittle@poulinwilley.com
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **AMOREY WALKER and BRYCE FOSTER-QUARLES**, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **SONY INTERACTIVE ENTERTAINMENT LLC,** <br><br> *Defendant*. | Civil Action No._____ <br><br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Amorey Walker and Bryce Foster-Quarles ("Plaintiffs") bring this Class Action

Complaint individually and on behalf of all others similarly situated, against Defendant Sony

1

Interactive Entertainment LLC, ("Defendant", "Sony"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

1.    Plaintiffs bring this class action complaint against Sony for its retention of a substantial windfall generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.    Beginning in February 2025, the Trump administration imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. The tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.    Major U.S. importers, including Sony, responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, consumers in the U.S. paid higher retail prices for goods reflecting the economic burden of these tariffs.

4.    Plaintiffs are such consumer.  Plaintiffs purchased a Sony PlayStation Console with a price that included a pass-through of the IEEPA tariffs.  Plaintiff Amorey purchased a PlayStation 5 Digital Edition on December 1, 2025, and Plaintiff Bryce Foster-Quarles purchased a paid a PlayStation 5 Digital Edition on February 20, 2026.  Upon information and belief, the price Plaintiffs paid for the PlayStations was higher due to Defendant passing on the cost of IEEPA tariffs.

5.    On February 20, 2026, the U.S. Supreme Court held that President Trump's IEEPA-based tariffs are unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20).

6.    Resulting from that decision, importers who paid those IEEPA-based tariffs – including Sony – became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP"). To facilitate the refunds to thousands of U.S. importers – including

2

Sony – the CBP created a tariff refund website to manage IEEPA duty refunds following the Supreme Court's February 20, 2026, *Learning Resources, Inc.* decision.

7.    The economic reality of the tariff regime, however, is that importers like Sony did not ultimately bear all the costs of the tariffs. Sony, for instance, passed the elevated costs on to U.S. consumers in the form of higher retail prices on one popular product, the Sony PlayStation, beginning on August 21, 2025.

8.    Sony therefore collected the tariff costs from consumers through elevated pricing, while seeking refunds of the same tariff payments from the federal government.

9.    Unless restrained by this Court, Sony stands to recover the same tariff payments twice – once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those refunds.

10.    This class action lawsuit seeks to prevent such an unjust result.

11.    Unlike companies such as FedEx and UPS who have explicitly stated they will pass tariff refunds back to their customers, Sony has made no such commitment.

12.    Plaintiffs bring this class action on behalf of thousands, if not millions, of U.S. consumers who purchased Sony's PlayStation Consoles during the tariff period and who paid inflated prices reflecting Sony's pass-through of unlawful tariffs.

13.    Plaintiffs seek restitution of these tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

**PARTIES, JURISDICTION & VENUE**

14.    Plaintiff Amorey Walker is a resident citizen of Brooklyn, New York. Plaintiff has purchased a PlayStation Console imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). The purchase price for the goods that

3

Plaintiff Walker purchased from Sony was increased to account for the tariffs imposed on those products. Plaintiff Walker would not have paid the increased price if Defendant had not passed the cost of the IEEPA tariffs on to consumers.

15.   Plaintiff Bryce Foster-Quarles is a resident citizen of Burnsville, Minnesota. Plaintiff has purchased a PlayStation Console imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). The purchase price for the goods that Plaintiff Foster-Quarles purchased from Sony was increased to account for the tariffs imposed on those products.  Plaintiff Foster-Quarles would not have paid the increased price if Defendant had not passed the cost of the IEEPA tariffs on to consumers.

16.   Defendant Sony Interactive Entertainment LLC is a California limited liability company with its headquarters and principal place of business at 2207 Bridgepointe Parkway, San Mateo, California. It is a wholly owned subsidiary of the Japanese consumer electronics and media conglomerate Sony Corporation and is the owner the PlayStation digital entertainment brand. Defendant may be served with process by serving its registered agent, CSC Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

17.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one class member and Defendant are citizens of different states. And there are over 100 putative Class Members.

18.   This Court has personal jurisdiction over Defendant because its headquarters are located within this District, Defendant regularly conducts business in this District, and the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

19.     Venue is proper in this Court because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District and because Defendant's principal place of business is located within this District.

## FACTUAL ALLEGATIONS

20.     Sony Interactive Entertainment LLC's parent company, Sony Group Corporation, is a global Japanese conglomerate known for its leading roles in electronics, gaming, music, and entertainment.

21.     Headquartered in San Mateo, California, Sony Interactive Entertainment LLC ("Sony" or "Defendant") is the global business behind the well-known PlayStation brand, responsible for the development, production, and sales of both hardware and software. Sony's most recent model, the PlayStation 5, has become the best-selling video game console of all time. The PlayStation 5 console launched on November 12, 2020, and by March 31, 2021, had sold 7.8 million units.[1] Going forward, the PlayStation 5's popularity has remained strong, selling millions of units a year.

22.     Sony currently produces the PlayStation 5, PlayStation 5 Pro, PlayStation 5 Slim, and PlayStation 5 Slim Digital Edition (the "PlayStation Consoles").

23.     The PlayStation Consoles are manufactured primarily in Japan, China, and Thailand, and then imported into the United States.

24.     Sony is the importer of record of most, if not all, PlayStation Consoles brought into the U.S. for sale. Thus, imported goods account for nearly all of Sony's retail sales of PlayStation Consoles in the U.S.

---

[1] *See* Sam Byford, Sony has sold 7.8 million PS5 consoles, The Verge (Apr. 28, 2021), https://www.theverge.com/2021/4/28/22407195/sony-ps5-sales-numbers-q4-2020-earnings.

25.     Because Sony imported the PlayStation Consoles sold in the U.S. during the Class period, the IEEPA tariffs directly increased Sony's cost of these Consoles sold to U.S. consumers.

26.     Beginning in February 2025, President Trump issued a series of executive orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. Each executive order was premised on IEEPA authorization of the tariffs. President Trump claimed that these tariffs were justified under IEEPA because of a purported national emergency.

27.     Under the authority of IEEPA, President Trump imposed tariffs of 25% on most imports from Canada and Mexico, tariffs as high as 145% from China, and a baseline 10% tariff on nearly all imports to the United States.

28.     Throughout the relevant period, Sony paid IEEPA tariffs to the CBP. The IEEPA tariffs had a substantial impact on the cost of Sony PlayStation Consoles, which are imported from tariffed countries, including a majority from China.

29.     Sony, for instance, revealed in its earnings report for July to September 2025, that the tariffs impacted Sony's PlayStation Console production in China, and required Sony to pay nearly $194 million in import-related fees during the July-September 2025 quarter.

30.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[2]

---

[2] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020).

31.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[3] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

32.     Sony was no exception. Like other companies that faced the massive IEEPA tariffs, Sony raised its PlayStation Consoles' prices on August 21, 2025, and then again on April 2, 2026.

33.     Citing inflation and global economic pressures, Sony passed the elevated tariff costs on to U.S. consumers in the form of higher retail prices. To offset its substantial tariff bill, on August 21, 2025, Sony raised prices for all versions of the PlayStation Consoles to be sold in the U.S. by $50. Then, on March 27, 2026, Sony announced it will raise prices once again on its range of PlayStation Consoles for a second time in less than a year. In the U.S., effective April 2, 2026, the Sony PlayStation 5 "disc edition" jumped from $549.99 to $649.99, a $100 increase (in addition to the $50 increase that Sony had already implemented on August 21, 2025, on all PlayStation Consoles). The PlayStation digital edition increased by $100, to $599.99. The U.S. sales price of the PlayStation 5 Pro, Sony's most powerful version of the console, increased by $150, to $899.99.

34.     On February 20, 2026, the U.S. Supreme Court held that the IEEPA tariff regime was unlawful because the IEEPA does not authorize the President to impose such tariffs; the Court

---

[3] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

thus invalidated all IEEPA-based tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. __ (2026) (slip op. at 20).

35.     President Trump subsequently issued an Executive Order terminating the IEEPA Tariffs, and on February 22, 2026, the CBP issued CSMS #67834313, announcing that it will halt collection of all tariffs imposed pursuant to IEEPA. The termination of IEEPA tariffs took effect at 12:00 a.m. EST on February 24, 2026.

36.     Consequently, importers who had paid these IEEPA-based tariffs – including Sony – became entitled to refunds of the duties they had previously paid to the CBP. According to Mr. Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 31 at 6.

37.     To facilitate refunds of the $166 billion in collected tariffs, the CBP created a tariff refund website – the "Consolidated Administration and Processing of Entries (CAPE) portal", which went live on Monday, April 20, 2026, at 8 a.m. EST. The CBP expects refunds to be issued within 60 to 90 days after it accepts a refund application.

38.     Given the substantial amount of IEEPA tariffs Sony paid to the CBP because of importing the Sony PlayStation Consoles, it is now, understandably, in the process of seeking this vast sum of money from the CBP.

39.     This presents an obvious problem. Although Sony will recover tariff refunds on the tariffed PlayStation Consoles it sold in the U.S. during the Class period, Sony's U.S. based customers bore the economic brunt of these tariffs by paying higher prices set by Sony on August 21, 2025, and then on April 2, 2026. Sony obtaining a double recovery windfall is therefore

imminent. Sony is poised to be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

40.    Sony has an affirmative obligation and duty not only to actively seek from the U.S. the tariff refund money belonging to its customers who purchased Sony PlayStation Consoles during the Class period, but also an affirmative obligation and duty to proactively return this money to the parties that ultimately paid them – Sony's customers.

41.    Unlike other companies including FedEx and UPS who have explicitly stated that they will pass tariff refunds back to their customers, Sony has made no such commitment.

42.    Because Sony has made no legally binding commitment, on its own, to return tariff-related overcharges to consumers who actually paid them, Mr. Qureshi and members of the Class are given no choice but to seek return of their money by means of this class litigation. Plaintiff believes this to be the most reliable, efficient, and economical vehicle to serve this purpose.

## CLASS ALLEGATIONS

43.    Plaintiffs bring this class action on behalf of herself and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The class Plaintiff seeks to represent can be defined as:

> **Nationwide Class**: **All individuals in the United States who purchased one or more Sony PlayStation Console(s) during the class period of August 1, 2025, to the present.**

44.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

45. Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

46. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

47. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiffs estimate that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

48. Typicality of Claims: Plaintiffs' claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased goods from Defendant that were subject to IEEPA tariff related price increases. The harm suffered by Plaintiffs are similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

49. Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interest antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

50. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

10

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

51.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

    a.    Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

    b.    Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

    c.    Whether Defendant breached duties owed to Plaintiff and Class Members;

    d.    Whether Defendant passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

    e.    Whether Defendant included additional processing or brokerage fees above and beyond the amount of the tariff costs;

    f.    Whether Defendant's conduct caused injury to Plaintiffs and Class Members;

    g.    Whether Defendant was unjustly enriched; and

    h.    The nature of relief, including damages and equitable relief, to which Plaintiffs and Class Members are entitled.

52.    These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

53.    Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

54.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct

for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## CAUSES OF ACTION
### COUNT I: UNJUST ENRICHMENT
**(On behalf of Plaintiffs and the Class)**

55. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

56. Plaintiffs and Class members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

57. Defendant knowingly received and accepted these benefits.

58. The tariff-related price increases that Defendant imposed and collected were unlawful and unauthorized.

59. Defendant collected and retained funds to which it was not legally entitled.

60. Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

61. It would be inequitable and unjust for Defendant to retain these funds.

62. Plaintiffs and Class members suffered economic injury as a result of Defendant's unjust retention of these funds.

63. Defendant was unjustly enriched at the expense of Plaintiffs and Class members.

64. Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class members.

### COUNT II: MONEY HAD AND RECEIVED
**(On behalf of Plaintiffs and the Class)**

65. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

12

67. Sony received money from Plaintiffs and from each member of the Class in the form of higher prices caused by the pass-through of IEEPA tariff costs.

68. Sony received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on the imported PlayStation Consoles.

69. The Supreme Court has since determined that these tariffs are unlawful because they lacked the requisite statutory authorization.

70. The money belonged to Plaintiffs and to each member of the Class. Specifically, the money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and to each member of the Class.

71. Sony has not returned the money to the Plaintiffs or to members of the Class.

72. It will give offense to equity and good conscience if Sony is allowed to retain the tariff surcharge. In equity and good conscience, Sony should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiffs and to members the Class, and Sony is obligated to return it to them. Plaintiffs and member of the Class seek return of the money in an amount to be proven at trial.

73. Plaintiffs plead this Count in the alternative to Count 1. While Count 1 (Unjust Enrichment) addresses the inequity of Sony's retention of overcharges already collected, this Count more particularly addresses Sony's receipt and retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Plaintiff and members of the Class, and not by Sony.

74. Plaintiffs and members of the Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

## COUNT III: DECLARATORY JUDGMENT
### (On behalf of Plaintiffs and the Class)

75.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

76.     In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

77.     Defendant has filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs.  However, Defendant passed the cost of the IEEPA tariffs onto consumers like Plaintiffs and Class Members.

78.     Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiffs and Class Members.

79.     As a direct and proximate result of the Defendant's conduct, Plaintiffs and Class Members suffered damages.

80.     In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

81.     Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

82.     Accordingly, Plaintiffs and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiffs and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

83.    Plaintiffs and Class Members are also entitled to a declaration that any refund Defendant obtains from the U.S. government for IEEPA tariffs must be returned to Plaintiffs and Class Members.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)    For an order declaring that Defendant is obligated to reimburse Plaintiffs and Class Members for any and all sums paid in connection with unlawful tariffs;

(d)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(e)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of equitable monetary relief;

(h)    For injunctive relief as pleaded or as the Court may deem proper;

(i)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j)    Such other and further relief as the Court deems necessary and appropriate.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

By: */s/ John C. Bohren*
**YANNI LAW APC**
John C. Bohren (California State Bar No. 298476)
145 S Spring St; #850 Los Angeles, CA 90012
Telephone: (833) 438-9266
Fax: (800) 867-6779
Email:Yanni@bohrenlaw.com

AND

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice Forthcoming*)
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Paul.doolittle@poulinwilley.com
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiff and the Class*