DAVID A. PEREZ (admitted *pro hac vice*)
DavidPerez@mofo.com
MALLORY A. GITT (admitted *pro hac vice*)
MGitt@mofo.com
SHIREEN LANKARANI (admitted *pro hac vice*)
SLankarani@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, Washington 98104-1157
Telephone: 206.327.6500
Facsimile: 206.260.8813

MELODY E. WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for SONY INTERACTIVE ENTERTAINMENT LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE SONY INTERACTIVE ENTERTAINMENT TARIFF LITIGATION

Consolidated Case No. 3:26-cv-04121-CRB

**REPLY IN SUPPORT OF SONY INTERACTIVE ENTERTAINMENT'S MOTION TO DISMISS**

Date: November 13, 2026
Time: 10:00 a.m.
Courtroom: Courtroom 6, 17th Floor

Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs confirm they do not have Article III standing based on a supposed "price premium" attributable to tariffs. ..... 2

1. Merely asserting a conclusory "price premium" does not establish injury. ..... 2

2. A bare price increase does not show that SIE passed on tariff costs and caused Plaintiffs' supposed "injury." ..... 3

B. Plaintiffs' voluntary payment of disclosed prices at the time of the transactions precludes recovery of those payments now. ..... 4

C. Plaintiffs' express contracts with SIE bar any theory of restitution, and Plaintiffs allege no facts showing any "unjust" circumstances. ..... 6

D. Casting the money-had-and-received claim as an "alternative" theory does not save it. ..... 9

E. Plaintiffs do not explain how they could amend to cure the defects in their legal theories. ..... 11

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Oil Service v. Hope Oil Co.*,
194 Cal. App. 2d 581 (1961) .......... 5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 7, 8

*Bastanchury v. Times-Mirror Co.*,
68 Cal. App. 2d 217 (1945) .......... 10

*Bekins v. Zheleznyak*,
2016 WL 1091057 (C.D. Cal. Mar. 21, 2016) .......... 10

*Berlanga v. Univ. of San Francisco*,
100 Cal. App. 5th 75 (2024) .......... 7

*Beyer v. Symantec Corp.*,
2019 WL 935135 (N.D. Cal. Feb. 26, 2019) .......... 3

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 2

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) .......... 2, 3

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 6, 7

*Deras v. Volkswagen Grp. of Am., Inc.*,
2018 WL 2267448 (N.D. Cal. May 17, 2018) .......... 7

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) .......... 4

*Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*,
2000 WL 1721080 (N.D. Cal. Nov. 7, 2000) .......... 10

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) .......... 6, 7

*Grebow v. Mercury Ins. Co.*,
241 Cal. App. 4th 564 (2015) .......... 7

*Haas v. Travelex Ins. Servs. Inc.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021) .......... 10, 11

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015) .......... 8

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
41 Cal. App. 4th 1410 (1996) .......... 7

*Hirsch v. Bank of America*,
107 Cal. App. 4th 708 (2003) .......... 8, 9, 10

*In re Dep't of Energy Stripper Well Exemption Litig.*,
968 F.2d 27 (Temp. Emer. Ct. App. 1992) .......... 8, 9

*Jackson v. Atl. Sav. of Am.*,
2014 WL 4802879 (N.D. Cal. Sept. 26, 2014) .......... 8

*Kolar v. Nespresso USA, Inc.*,
2025 WL 1717279 (C.D. Cal. June 13, 2025), *adopted*, 2025 WL 1717278 (C.D. Cal. June 16, 2025) .......... 3

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 4

*Mahoney v. Fid. Nat'l Title Co.*,
2008 WL 4286934 (C.D. Cal. Sept. 15, 2008) .......... 10

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .......... 9

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 2, 3

*MH Pillars Ltd. v. Realini*,
277 F. Supp. 3d 1077 (N.D. Cal. 2017) .......... 7

*Morehouse v. Apple, Inc.*,
2026 WL 2111332 (N.D. Cal. July 22, 2026) .......... 2

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) .......... 3

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) .......... 11

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) .......... 6

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008)........................................................................................ 8, 9

*Petro Star, Inc. v. BP Oil Supply Co.*,
584 F. App'x 709 (9th Cir. 2014) ........................................................................................ 7

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
29 Cal. App. 5th 230 (2018)........................................................................................ 8, 10

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) .................................................................. 4, 5

*Rabin v. Google LLC*,
725 F. Supp. 3d 1028 (N.D. Cal. 2024) ............................................................................... 6

*Rodman v. Safeway Inc.*,
125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ..................... 5

*Saroya v. Univ. of the Pac.*,
503 F. Supp. 3d 986 (N.D. Cal. 2020) ............................................................................ 7, 9

*Scarlett v. Cnty. of Santa Clara*,
2024 WL 4804978 (N.D. Cal. Nov. 15, 2024)....................................................................... 9

*Siegel v. Shell Oil Co.*,
480 F. Supp. 2d 1034 (N.D. Ill. 2007) ................................................................................ 6

*Sierra Inv. Corp. v. Cnty. of Sacramento*,
252 Cal. App. 2d 339 (1967)........................................................................................ 4, 5

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)........................................................................................ 11

*Tae Youn Shim v. Lawler*,
2019 WL 2996443 (N.D. Cal. July 9, 2019)........................................................................ 8

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)........................................................................................................ 9

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) ................................................................................ 7

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021)........................................................................................ 4

*Wilson v. ColourPop Cosms., LLC*,
2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ....................................................................... 2

## I. INTRODUCTION

The Opposition confirms the fundamental defect in Plaintiffs' case: Plaintiffs bought PlayStation consoles at disclosed retail prices and received exactly what they paid for. They now seek a share of a government refund that SIE may receive, as the importer of record, for import duties that SIE itself paid. No legal theory entitles them to it.

Plaintiffs' concessions frame the issue. They "do not contend that the PlayStation consoles were defective, unsafe, or inherently worth less than represented." (Pls.' Opp'n to Def.'s Mot. to Dismiss ("Opp."), ECF No. 32 at 7.) They do not contend that SIE "lacked the right to charge the posted price when the sale occurred." (*Id*. at 10.) And they acknowledge that their theory "depends on a subsequent reimbursement event" and on facts "that were not established at the time of purchase." (*Id*. at 9.) Plaintiffs thus admit that each sale was lawful and complete when made. What they ask is for the Court to hold that a later government refund *retroactively* makes those sales actionable.

That premise fails under every doctrine Plaintiffs invoke. Paying a disclosed price for a product one receives is not an Article III injury, whatever label Plaintiffs attach to it, and Plaintiffs plead no facts tracing any price increase to tariffs. The voluntary payment doctrine asks what the payor knew when paying, not what a court later decided about the seller's input costs. Restitution is unavailable both because express sales contracts govern these transactions and because there is nothing unjust about a seller keeping the agreed price for a product the buyer received. And a refund of duties that SIE paid to the government is not money held "for the use of" downstream purchasers.

Unable to answer these legal defects, the Opposition recasts them as questions of proof for discovery. They are not. The Complaint fails not for lack of evidence, but because Plaintiffs' theory cannot support the relief they seek *and* the facts Plaintiffs plead cut against them. By Plaintiffs' own account, SIE cited "inflation and global economic pressures" when it raised prices, and it raised prices again after the tariffs were invalidated. (Consolidated Class Action Complaint ("Compl."), ECF No. 28 ¶¶ 35, 59.) Plaintiffs identify no additional fact they could plead to change any of this.

Plaintiffs' theory also has no limiting principle. If a later refund of one input cost entitled prior customers to a share, so would a tax rebate, a renegotiated supplier contract, or a favorable currency swing. The law imposes no such obligation. The Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs confirm they do not have Article III standing based on a supposed "price premium" attributable to tariffs.

#### 1. Merely asserting a conclusory "price premium" does not establish injury.

Plaintiffs concede that they received the benefit of the bargain for their consoles and that the consoles were not "defective, unsafe, or inherently worth less than represented." (*See* Opp. at 7.) That is fatal to the "price premium" theory they assert for Article III standing. (*Id.* at 5, 7.) Case after case confirms that a plaintiff must allege some factual support to plausibly show a price premium—whether it be an alleged defect, comparator product, misrepresentation, actionable omission, or contention that the product was worth less.[1] (SIE's Mot. to Dismiss ("Mot."), ECF No. 31 at 5–6 (citing cases addressing an alleged overpayment from a price premium).) Plaintiffs have not alleged a single such fact, and their mere assertion of a premium does not establish an injury.

*Bowen v. Energizer Holdings* does not help Plaintiffs. (*See* Opp. at 7 (citing 118 F.4th 1134 (9th Cir. 2024)).) The Ninth Circuit concluded the plaintiff had alleged standing because she "spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for" because of alleged misrepresentations about the sunscreen. *Bowen*, 118 F.4th at 1146–47. Plaintiffs do not allege any misrepresentations—"a key element of [the Ninth Circuit's] overpayment cases." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707 (9th Cir. 2020). ***In fact, they acknowledge that SIE***

[1] Plaintiffs' purported "injury" is not "materially different" from the injuries rejected in *Birdsong*, *Morehouse*, and *Wilson*. (*See* Opp. at 7.) As in those cases, Plaintiffs were not deprived of an agreed-on benefit in purchasing their consoles; they received what they paid for. Moreover, these cases confirm that overpayments are assessed based on prices at the time of purchase (not retroactively) and that Plaintiffs' subjective assumptions about tariff costs or any future entitlement to tariff refunds (if Plaintiffs even had such assumptions) were not part of their bargain. (*See* Mot. at 5–6 (citing *Wilson v. ColourPop Cosms., LLC*, 2023 WL 6787986, at *5 (N.D. Cal. Sept. 7, 2023); *Morehouse v. Apple, Inc.*, 2026 WL 2111332, at *2 (N.D. Cal. July 22, 2026); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)).) Plaintiffs fail to even address those arguments.

***disclosed the very price increase they say constitutes the premium.*** *See Kolar v. Nespresso USA, Inc.*, 2025 WL 1717279, at *4 (C.D. Cal. June 13, 2025) (explaining that a plaintiff cannot establish an overpayment injury where the purported issue was disclosed), *adopted*, 2025 WL 1717278 (C.D. Cal. June 16, 2025).

Lacking any alleged misrepresentation, Plaintiffs rely on a footnote in *Bowen* that observed the court has not resolved whether "a plaintiff may rely on an overpayment theory of economic injury in a case that does not involve misrepresentations." *Bowen*, 118 F.4th at 1145 n.10 (quoting *McGee*, 982 F.3d at 707). That footnote merely reserved the question; it does not suggest the theory is viable. But even if such a theory could proceed, Plaintiffs do not allege the omission of any fact that existed at the time of their purchases, much less one that SIE had a duty to disclose. (*See generally* Compl. ¶¶ 28–44); *see also Beyer v. Symantec Corp.*, 2019 WL 935135, at *3–4 (N.D. Cal. Feb. 26, 2019) (no Article III standing where the defendant allegedly omitted information because "a bare assertion that [the plaintiffs] overpaid for the [a]ffected products" was insufficient). Labeling a disclosed price a "monetary loss" after the fact does not make it one. (*See* Opp. at 7.) *Naimi v. Starbucks Corp.* confirms the point. (*See* Opp. at 6, 8 (citing 798 F. App'x 67 (9th Cir. 2019)).) The Ninth Circuit held that the "bare recitation of the word 'premium' does not adequately allege a cognizable injury" absent "details regarding the alleged price premium." *Naimi*, 798 F. App'x at 70. So too here.

**2. A bare price increase does not show that SIE passed on tariff costs and caused Plaintiffs' supposed "injury."**

Plaintiffs also continue to rely on speculation that SIE "passed through" IEEPA tariffs as price increases. (*See* Opp. at 7–8.) The Complaint's only allegations of pass-through are made "[u]pon information and belief" (Compl. ¶¶ 4, 14–15) and rest on generic surveys of what companies "typically" do (*id.* ¶¶ 32–33). Speculation cannot establish Article III standing, and in any event, the Complaint itself contradicts it. Plaintiffs allege that SIE explained price increases for consoles were attributable to "inflation and global economic pressures"—not to tariffs. (*Id.* ¶ 35.) And Plaintiffs admit that SIE raised prices again *after* the tariffs were invalidated, undercutting their theory that tariffs caused the earlier price increases. (*Id.* ¶¶ 35, 59.)

Confronted with this deficiency, Plaintiffs try to defer their burden by theorizing that they could develop facts in discovery. (Opp. at 8.) They have it backward: "discovery cannot cure a facially insufficient pleading," *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021), and the same plausibility standard governs Article III standing at this stage, *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). And by asserting that causation is "at best addressed during the discovery process," Plaintiffs confirm they do not sufficiently connect tariffs to increased prices. (*See* Opp. at 8.)

*Diamond Alternative Energy, LLC v. EPA* does not support Plaintiffs' speculation. 606 U.S. 100 (2025). There, fuel producers challenged the EPA's approval of California regulations requiring automakers to manufacture more electric vehicles, and the Supreme Court concluded that the producers had standing because the regulations would predictably reduce demand for gasoline and other liquid fuels. *Id*. at 113–14. Neither the EPA nor California "meaningfully dispute[d]" injury or causation, which followed from what the Court called "the whole point of the regulations." *Id*. And the Court drew "commonsense inferences" only because the relevant "third party behavior [was] predictable," reaffirming that courts "must distinguish the 'predictable' from the 'speculative.'" *Id*. at 112, 116. The inference Plaintiffs attempt here is neither predictable nor commonsense: SIE attributed its price increases to inflation and global economic pressures, SIE raised prices again after the tariffs were invalidated, and Plaintiffs allege that companies responded to tariffs differently, with only some allegedly passing through "at least some portion of those costs." (Compl. ¶ 33.) Plaintiffs' theory therefore rests on precisely the "speculative effects" that *Diamond Alternative Energy* instructs courts to distinguish from "predictable" inferences that could establish standing. *See* 606 U.S. at 112 (quotations omitted).

### B. Plaintiffs' voluntary payment of disclosed prices at the time of the transactions precludes recovery of those payments now.

Money voluntarily paid with full knowledge of the facts cannot be recovered, absent fraud, duress, or mistake. *Rabin v. Google LLC*, 2023 WL 4053804, at *7 (N.D. Cal. June 15, 2023); *Sierra Inv. Corp. v. Cnty. of Sacramento*, 252 Cal. App. 2d 339, 342 (1967). As SIE explained in its motion, Plaintiffs paid the advertised prices for their consoles with knowledge of the ***then-***

***existing*** facts. (*See* Mot. at 8; Opp. at 8–9 (not disputing that Plaintiffs "saw and paid Sony's posted retail price").)

Plaintiffs nevertheless contend they did not voluntarily pay because they did not know facts that allegedly manifested ***only after*** their transactions: that "a portion of [the price Plaintiffs paid] was due to tariffs that were illegally imposed and would be refunded to Sony." (Opp. at 9.) Indeed, they acknowledge this purported "inequity arose from a later event that had *not occurred* when Plaintiffs made their purchases." (*Id*. (emphasis added); *see also id.* ("Plaintiffs' theory depends on a subsequent reimbursement event and on facts concerning Sony's tariff pass-through and refund recovery that were not established at the time of purchase.").) Plaintiffs do not cite any legal authority suggesting that a fact that *did not exist at the time of their transactions* can transform their voluntary payments into involuntary payments. To the contrary, California applies the doctrine even to taxes that are later found to have been "illegally levied or collected," absent a statute permitting a refund, because taxes "freely and voluntarily paid may not be recovered." *Sierra Inv. Corp.*, 252 Cal. App. 2d at 342. Even if tariffs were part of the purchase price, neither SIE nor Plaintiffs knew (or could have known) the tariffs would eventually be invalidated or that SIE may be refunded for them. Plaintiffs allege no fraud, duress, or compulsion—only changed circumstances. And the only refund mechanism here runs to the importer that paid the duties, not to downstream purchasers who paid a retail price.

Plaintiffs' authorities are off base. In *American Oil Service v. Hope Oil Co.*, the voluntary payment doctrine did not apply because the plaintiff, through its own bookkeeping oversight, kept making payments after the contract price had been paid in full—"a mistake of fact" about the amount then owed. 194 Cal. App. 2d 581, 586–87 (1961). In *Rodman v. Safeway Inc.*, the voluntary payment doctrine did not apply because customers were unaware that online prices were allegedly more expensive than in-store prices and that the higher prices contravened the store's "price parity" policy—facts that existed at the time of their purchases and that Safeway had "actively conceal[ed]." 125 F. Supp. 3d 922, 941–42 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017). No similar at-the-time-of-purchase facts or deceptive pricing allegations are at issue here. *See Rabin*, 2023 WL 4053804, at *7–8 (dismissing claims under voluntary payment doctrine

because plaintiffs continued to pay for services after learning the relevant facts).

Nor does it matter that voluntary payment is an affirmative defense. (Opp. at 6, 9.) As Plaintiffs acknowledge, dismissal is appropriate where "the complaint itself establishes the defense as a matter of law." (*Id*. at 6; *see also* Mot. at 8 n.2.) The Complaint does just that: Plaintiffs allege that they paid the disclosed prices and received their consoles, and they allege no fraud, duress, or compulsion. (Compl. ¶¶ 4, 14–16.) Plaintiffs' own authorities confirm the point. The later *Rabin* decision recognized that an affirmative defense may be resolved on a motion to dismiss when it "raises no disputed issues of fact," and declined to dismiss only after the plaintiffs amended to allege that they paid "involuntarily and under duress." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1030–31 (N.D. Cal. 2024) (citation omitted). And *Siegel* applied Illinois law to allegations of "concerted, artificial price inflation," facts of which the plaintiffs allegedly lacked "full knowledge" when they paid. *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1049 (N.D. Ill. 2007). Plaintiffs allege nothing comparable and could not amend to do so, either.

### C. Plaintiffs' express contracts with SIE bar any theory of restitution, and Plaintiffs allege no facts showing any "unjust" circumstances.

Plaintiffs do not dispute that unjust enrichment is not a "freestanding tort" but argue that their allegations can proceed as a quasi-contract claim for restitution. (Opp. at 9–10 (referring to California law).)[2] Regardless of the label, neither unjust enrichment nor quasi-contract can proceed where "a valid express contract covering the same subject matter" exists between the parties. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 999–1000 (N.D. Cal. 2014); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (declining to construe unjust enrichment as quasi-contract where complaint pleaded a contract). Plaintiffs purchased consoles from SIE at disclosed prices, creating enforceable sales contracts. (*See* Opp. at 11 (referring to "the parties' sales contract" and "Plaintiffs' purchase agreements"); Compl. ¶ 84 (requesting that the Court declare "void" the "contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiffs")); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (retail purchase "creates an express contract between the buyer and seller"). By affirmatively

[2] Plaintiffs do not dispute that California law applies to their state law claims. (*See* Opp. at 5, 8–9, 12; *see also* Mot. at 8 n.1.)

"plead[ing] the existence" of these contracts, Plaintiffs foreclose their quasi-contract (unjust enrichment) theory. *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 732 (N.D. Cal. 2024) (quoting *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020)).

That the contracts do not address later tariff refunds is beside the point. The contracts govern the sale of consoles at agreed prices—the precise subject matter of Plaintiffs' claim—and restitution is unavailable where a valid contract existed "albeit without the terms they sought." *Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 89 (2024). Contractual silence does not create a gap for equity to fill: "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996); *Grebow v. Mercury Ins. Co.*, 241 Cal. App. 4th 564, 580 (2015) (same). *Petro Star v. BP Oil Supply* is instructive. 584 F. App'x 709, 710 (9th Cir. 2014). Contrary to Plaintiffs' description (Opp. at 11), the contracts there did "not specify whether [the buyer] should receive any of the $31 million in tariff refunds" the seller later received, *Petro Star*, 584 F. App'x at 710. The Ninth Circuit nonetheless affirmed summary judgment on the unjust enrichment claim: "Regardless of which party is entitled to the tariff refunds under the Contracts, that party will receive a windfall. The consequences of such risk-benefit allocation do not constitute unjust enrichment." *Id.* at 712.

Nor does Rule 8 permit Plaintiffs to evade this bar through alternative pleading (Opp. at 12): the rule "does not alter a substantive right between the parties" and "does not allow a plaintiff invoking state law to [assert] an unjust enrichment claim while also alleging an express contract." *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018) (quoting *Gerlinger*, 311 F. Supp. 2d at 856); *Brodsky*, 445 F. Supp. 3d at 133 (same).

But even if Plaintiffs could pursue quasi-contract relief, they do not allege any "unjust" circumstances that could support it. *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (explaining that quasi-contract or unjust enrichment requires an "unjust retention of that benefit at the plaintiff's expense"); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (unjust enrichment and restitution "describe the theory underlying a claim that a defendant

has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request'" (citation omitted)).[3] When a plaintiff "gets the exchange which he expected," there is "no equitable reason for invoking restitution." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (citation omitted). Plaintiffs' own case undermines their theory: "Restitution is not mandated merely because one person has realized a gain at another's expense"; the obligation arises only "when the enrichment obtained lacks any adequate legal basis." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015); (*see also* Opp. at 9 (citing *Hartford*).) A refund of duties that SIE paid as the importer of record does not lack an adequate legal basis. Plaintiffs knowingly purchased consoles at disclosed prices and received exactly what they paid for. SIE made no promise of a future rebate, no commitment to adjust prices if costs changed, and no representation that its retail prices either included or excluded tariffs. SIE's later receipt of a tariff refund does not retroactively render transactions that were completed months before unjust. *Tae Youn Shim v. Lawler*, 2019 WL 2996443, at *20 (N.D. Cal. July 9, 2019) (unjust enrichment claim does not lie where "plaintiffs received the benefit of the bargain" (quoting *Peterson*, 164 Cal. App. 4th at 1593)).

Plaintiffs respond to these fundamental deficiencies by attacking an argument SIE never made: that restitution requires a direct payment from a plaintiff to a defendant. (*See* Opp. at 10.) SIE's point is that Plaintiffs do not allege the unjust retention of any benefit, whether it is direct or indirect. (*See* Mot. at 10–11.)

Plaintiffs' authorities do not establish otherwise. In *Hirsch v. Bank of America*, the plaintiffs alleged specific "overcharges" in the form of "excessive fees" that were unjustified at the time they were levied. 107 Cal. App. 4th 708, 721–22 (2003). In *Professional Tax Appeal v. Kennedy-Wilson Holdings*, the plaintiff's own "uncompensated" services generated the very property-tax refund that the defendant, a subsequent property owner, received and retained. 29 Cal. App. 5th 230, 238–40 (2018). *In re Department of Energy Stripper Well Exemption Litigation*—which Plaintiffs acknowledge "applied federal common law in a specialized regulatory setting" (Opp. at 11)—

[3] Plaintiffs concede that their declaratory judgment claim is "derivative of and rises or falls with" their restitution claims. (Opp. at 13.) It therefore fails for the same reasons. *See Jackson v. Atl. Sav. of Am.*, 2014 WL 4802879, at *3–4 (N.D. Cal. Sept. 26, 2014).

involved a purchaser who retained an identifiable severance-tax refund corresponding to amounts the seller had already been ordered to pay in restitution for unlawful overcharges under federal petroleum price controls. 968 F.2d 27, 29–30, 37–39 (Temp. Emer. Ct. App. 1992). And in *US Airways v. McCutchen*, the Supreme Court confirmed that equitable principles could not override a contract's express allocation but permitted the common-fund doctrine to fill a gap concerning attorney's fees in an ERISA plan because it reflected "the best indication of the parties' intent"—a matter plainly irrelevant here. 569 U.S. 88, 91, 104 (2013).

None of these cases support restitution for consumers to recover a refund for a supposed input cost that allegedly influenced a seller's retail prices months earlier. Indeed, *Peterson*—which Plaintiffs try to distinguish as lacking pass-through allegations (Opp. at 12)—distinguished *Hirsch* on exactly this ground. The *Hirsch* plaintiffs paid "'overcharges' in the form of excessive fees that were unjustly retained," whereas the *Peterson* plaintiffs "received the benefit of the bargain." *Peterson*, 164 Cal. App. 4th at 1595–96. The same is true here: Plaintiffs do not dispute that SIE had "the right to charge the posted price" (Opp. at 10), so there was no overcharge.

**D. Casting the money-had-and-received claim as an "alternative" theory does not save it.**

Plaintiffs' money-had-and-received claim fails for two threshold—and independently dispositive—reasons that Plaintiffs never address: (1) the claim relies on the same failed theory as their other claims and (2) the parties' express contracts govern the same subject matter. (*See* Compl. ¶ 75; Opp. at 12–13.) Plaintiffs therefore concede both points. *See Scarlett v. Cnty. of Santa Clara*, 2024 WL 4804978, at *5 (N.D. Cal. Nov. 15, 2024) (Breyer, J.) (concluding argument not disputed on opposition was "conceded"). When a money-had-and-received claim is pleaded "as an alternative way of seeking the same recovery" as an underlying claim and "is based on the same facts," it "must stand or fall" with that claim. *McBride v. Boughton*, 123 Cal. App. 4th 379, 394–95 (2004). Because the unjust enrichment claim fails, this claim fails too. And as with their unjust enrichment claim, the parties' express contracts foreclose relief under a money-had-and-received theory. (Opp. at 11; Compl. ¶ 84); *Saroya*, 503 F. Supp. 3d at 999.

But even setting aside these threshold defects, Plaintiffs do not allege the elements for this claim. First, they do not show that the money allegedly "received"—alleged tariff refunds—is for *their* "use." *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, 2000 WL 1721080, at *8 (N.D. Cal. Nov. 7, 2000). The alleged refunds reimburse SIE for duties that SIE paid to the government. Plaintiffs do not identify any source suggesting the refunds are intended to reimburse downstream purchasers or any statute, contract, or equitable principle requiring that refunds be shifted from reimbursing SIE to reimbursing purchasers. Their authorities—*Hirsch* and *Professional Tax Appeal*—did not address money-had-and-received claims. And as explained above, the cases involved a specific benefit that indisputably belonged to the plaintiff. *See Hirsch*, 107 Cal. App. 4th at 721–22; *Prof'l Tax Appeal*, 29 Cal. App. 5th at 238–40. There is no similar "benefit" here: Plaintiffs have no claim of ownership over a government refund to an importer of record for duties that the importer paid. *See Bekins v. Zheleznyak*, 2016 WL 1091057, at *7 (C.D. Cal. Mar. 21, 2016) (dismissing claim because money-had-and-received "only applies in cases where a defendant has received money that is intended to be used by the plaintiff or for the benefit of the plaintiff," as where "defendants misappropriated commissions that were earned by and belonged to the plaintiff" or "funds belonging to the plaintiff were given to the defendant for safekeeping").

Second, SIE is not "indebted" to Plaintiffs—an element Plaintiffs do not address. *Fireman's Fund Ins. Co.*, 2000 WL 1721080, at *8. Each sale is complete: Plaintiffs paid the posted price, and SIE delivered the consoles. SIE does not have any remaining obligation as to the purchase. The government's later refund does not create a debt from SIE to consumers who were never party to the tariff payments. *See Mahoney v. Fid. Nat'l Title Co.*, 2008 WL 4286934, at *4 (C.D. Cal. Sept. 15, 2008) (dismissing money-had-and-received claim where defendant "provided the agreed-upon service" in exchange for plaintiff's payment).

Third, Plaintiffs have not pleaded—and cannot plead—a "definite sum" to which they are entitled. *Bastanchury v. Times-Mirror Co.*, 68 Cal. App. 2d 217, 236 (1945). The Complaint identifies no tariff-specific charge on any receipt, no allocated cost component in any invoice, and no method by which a tariff amount could be disaggregated from SIE's retail price. And as with causation, discovery cannot supply missing allegations; Plaintiffs must "plead facts showing that

the amount sought is *capable of* being reduced to a sum certain." *Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 982 (C.D. Cal. 2021) (emphasis in original). Plaintiffs' response that the amount is "particularly suited to discovery and accounting" (Opp. at 13) inverts that requirement.

*Haas* underscores their shortcoming. In that case, the plaintiff identified a gross insurance premium covering separate policy benefits and alleged that the insurer could "readily identify the pro rata share of the gross premium which is attributable to each policy benefit purchased." *Haas*, 555 F. Supp. 3d at 982. Here, Plaintiffs plead no facts explaining how any purported tariff component of console prices could be identified or calculated. Nor could they, because SIE's retail price is an undifferentiated figure reflecting numerous inputs. Even if tariffs were included in the price, Plaintiffs' theory requires guesswork, not "accounting." (*See* Opp. at 13; Mot. at 13.)

### E. Plaintiffs do not explain how they could amend to cure the defects in their legal theories.

The Complaint's deficiencies are legal—not factual—and no amendment could cure them. Plaintiffs purchased consoles at disclosed prices under express contracts and received what they paid for. No allegation can undo those transactions, eliminate the contracts that govern them, or create a statutory or equitable entitlement to the proceeds of any tariff refund paid to SIE as the importer of record. Plaintiffs' request for leave to amend does not identify a single additional fact they could plead to cure these deficiencies (*see* Opp. at 14)—nor could it, because the core obstacles to their claims are structural. Amendment would be futile, and dismissal should be with prejudice. *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (explaining that dismissal without leave to amend is appropriate where "any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal" (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998))).

## III. CONCLUSION

Plaintiffs' theory would effectively make every retail price provisional. Consumers could reopen completed purchases months or even years later if a seller's anticipated costs or risks proved lower than expected—because the seller later negotiated a better supply price, benefited from the suspension of a tax, or prevailed in litigation it had budgeted to lose. Nor would the consequences

stop with the seller. Countless obligations are calculated from the sale price—from taxes already collected by governments to royalties, commissions, and revenue shares owed to third parties. Retroactively repricing a sale would therefore require recalculating each of those obligations, setting off an endless chain of adjustments long after the transaction closed. The law does not allow for perpetual accountings of completed retail transactions whenever later events allegedly alter a seller's economics. For these reasons, SIE respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: October 21, 2026

By: *s/ David A. Perez*
David A. Perez

DAVID A. PEREZ (admitted *pro hac vice*)
MALLORY A. GITT (admitted *pro hac vice*)
SHIREEN LANKARANI (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 38
Seattle, Washington 98104-1157
Telephone: 206.327.6500
Facsimile: 206.260.8813

MELODY E. WONG (CA SBN 341494)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for SONY INTERACTIVE ENTERTAINMENT LLC